**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                    No. 21-CR-01934 MV

SANTIAGO MARTINEZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the government's Motion in Limine to Admit Jane Doe's Electronic Statements to Defendant Regarding Ending Their Relationship [Doc. 63] and Second Motion in Limine to Admit Jane Doe's Electronic Statement [Doc. 79]. Having carefully considered the briefs, exhibits, and relevant law, and being otherwise fully informed, the Court finds that the government's Motions in Limine are not well taken and will be denied.

## BACKGROUND

The government seeks to introduce seven groups of text messages from Jane Doe to Mr. Martinez. The government contends that these messages are non-hearsay, as they are being submitted not for the truth of the matter asserted but rather for their effect on Mr. Martinez—namely, that he believed Jane Doe was going to end their relationship.

The seven groups of text messages at issue are as follows.

Jane Doe sent the first message on July 18, 2021. In her message, she stated, "I am honestly over us. I don't want to [spend] your birthday with you. I would rather break up before this weekend. I don't want to be in this relationship as a [*sic*] mentioned a whole bunch of times. I

1

don't think we're moving forward, I think the both of us are growing apart." Doc. 63 at 2. Mr. Martinez did not respond to this message.

Jane Doe sent the second text message on July 23, 2023, stating, "I'm done," "We're done." *Id.* at 3. Mr. Martinez responded that he was "walking back home" and "already told his parents." *Id.* To that, Jane Doe wrote, "Okay so you told [them] we're officially done? Because we are." *Id.* And Mr. Martinez responded, "That you got all hurt because I was smoking a cigarette." *Id.*

In the third message, on August 28, 2021, Jane Doe wrote in relevant part, "stop calling me with threats," and Mr. Martinez responded that he was "[w]alking home," and then that he was "outside." *Id.*

In the fourth message, on September 9, 2021, Jane Doe wrote, "I am officially breaking up with you. I would say this in person or even a call, but your aggressive behavior makes me tell you this via text. . . It's not fun anymore, it's a huge burden and I'm past those days. We both have better things and responsibilities to take care of." *Id.* at 3. She ended with, "I'm stepping away." *Id.* Mr. Martinez responded, "we're on our way now babe. I love you so much and can't wait to be there with you [heart emoji] be careful on your way down." *Id.* at 4.

In the fifth message, on September 26, 2021, Jane Doe repeatedly wrote that they "were done, broken up," that she was "blocking" him, that she didn't need this or him, that she was "done putting up with [his] behavior," that she would "get [her] stuff out this week." *Id.* at 4. In response, Mr. Martinez wrote that he "walked all morning," "[w]hatever go ahead," and "[y]eah you don't need me." *Id.* He offered to take her stuff out of his house, and she responded, "I don't need your aggression, I'll do [it] myself and be out of your way." *Id.* at 4-5.

In the sixth message, on November 5, 2021, Jane Doe again texted Mr. Martinez, stating that they "really need to take time from each other," that she "was not in the right place to be in a

relationship" with him," that she was "not happy anymore," and that she needed "time to work on [her] priorities, [her] work and school," but "[b]eing around [him] everyday prevents [her] from doing that." *Id.* at 5. In response, Mr. Martinez apologized for asking her to tie his hair, stated that he was "not going to argue about this and if [she] didn't want to stay around [him] then [she didn't] have to," that he knows that his "attitude is bad and [he's] going to work on controlling it," and that if he prevented her from working on his priorities, then she shouldn't be with him. He ends with, "I'm sorry [Jane]." *Id.*

Lastly, on November 6, 2021, Jane Doe sent a text attaching a photo of a screenshot of Mr. Martinez's phone, in which Mr. Martinez received a sexual picture of another woman. Doc. 79 at 3. Her text said, "this photo makes it very clear for me to end this relationship. You pretended to be single around this time last year. Now you can have what you really wanted, being single." *Id.* She then wrote, "there's a cop up here, going next door," and Mr. Martinez responded, "I don't think that was the cops looked like my uncles brown truck." *Id.*

On the instant motions, the government seeks to admit these text messages. Docs. 63, 79. Defendant filed responses to the motions, opposing admission of Jane Doe's text messages. Docs. 75, 83. The government filed replies in further support of their request. Docs. 77, 85. On October 26, 2023, the Court held a hearing on, *inter alia*, the instant motions. During the hearing, the Court questioned the government as to whether any authority existed in which courts have admitted prior, out-of-court communications from a victim to a defendant for the purpose of establishing that a defendant had a motive to commit the charged crime. To address that question, on October 27, 2023, the government filed the United States' Supplemental Briefing to its First and Second Motions in Limine to Admit Jane Doe's Electronic Statements to Defendant Regarding Ending Their Relationship ("Supplemental Brief") [Doc. 105].

**DISCUSSION**

Out-of-court statements offered for the truth of the matter asserted are inadmissible hearsay. Fed. R. Evid. 801, Fed. R. Evid. 802. However, statements "offered to establish their effect on [the listener] and provide context for [the listener's] statement" are not hearsay. *United States v. Smalls*, 605 F.3d 765, 785 n.18; *see also Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993) ("Statements offered for the effect on the listener . . . are generally not hearsay."). Such statements "may be admitted to show why the listener acted as she did." *United States v. Churn*, 800 F.3d 768, 776 (6th Cir. 2015). Notably, "[a] statement is offered to show an effect on the listener only if the listener heard and reacted to the statement," and if the 'actual use' of the statement at trial was to demonstrate the listener's response." *United States v. Graham*, 47 F.4th 561, 567 (7th Cir. 2022).

Thus, for example, in *Smalls,* the Court held that a confidential informant's statements made to the defendant were admissible because they were introduced to show the effect on the listener, where the CI had a conversation with an accomplice of the defendant in which the CI specifically elicited statements from the accomplice that he and the defendant had in fact committed the offense at issue. 605 F.3d at 769-770. The Court specifically held that the CI's statements were admissible to provide context for an accomplice's statements. *Id.* Thus, the effect on the listener exception applied because there was clear evidence that the listener responded and reacted to the statements and the *actual use* of the statement was to demonstrate the listener's response, namely his statements saying that he committed the crime.

Similarly, in *United States v. Morales-Macias,* the Tenth Circuit held that a witness's out-of-court statements indicating that the defendant's brother had instructed the defendant to go to a certain bar were admissible to show the effect on the listener. 855 F.2d 693 (10th Cir. 1988).

Notably, there was evidence in *Morales-Macias* that the defendant did in fact respond and react to the out-of-court statements by following the instructions. *Id.* at 695.

In contrast, where a party seeks to introduce multiple conversations occurring over a span of time to show the "effect on the listener," there is a significant risk that the evidence is being introduced for the truth of the matter asserted. The Seventh Circuit held as much in *United States v. Silva,* 380 F.3d 1018, 1020 (7th Cir. 2004), where it rejected the prosecution's theory that several out-of-court statements made by third parties to a DEA agent throughout an extended investigation about different acts that the defendant had allegedly committed were admissible to show why the DEA agent conducted the investigation the way that he did. *Id.*

The government seeks to admit Jane Doe's text messages described above for the purpose of establishing that Mr. Martinez believed that Jane Doe "intended to break up with him, and thus "had a corresponding motive to end her life." Doc. 63 at 6. The government acknowledges that it would be prohibited by the hearsay rules from offering Jane Doe's text messages to prove the truth of the matter asserted in those messages. *See* Fed. R. Evid. 801(c)(2) (inadmissible hearsay is an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted.").[1] According to the government, however, it "does not seek to admit [Jane Doe's text messages] for the truth of the matter asserted, *i.e.*, that [she] really intended to break up with Defendant." Doc. 63 at 6. Rather, the government argues, it seeks to admit the messages to show only "their effect on Defendant, in that he believed Jane Doe intended to break up with him." *Id.* at 7.

Thus, under the "effect on the listener" doctrine, the government arguably would be permitted to use Jane Doe's text messages to demonstrate Mr. Martinez's responses to those

---

[1] Mr. Martinez's messages to Jane Doe are admissible as statements of a party opponent, which are not hearsay. Fed. R. Evid. 801(d)(2)(A).

messages, *i.e.*, his reaction each time she announced her intention to end their relationship, and to put those responses in context. But the government's proposed use of Jane Doe's statements is "not so circumscribed" as this. *Graham*, 47 F.4th at 567. In response to Jane Doe telling him that she no longer wanted to be in a relationship, Mr. Martinez either did not respond at all, responded but did not address the portions of her messages that indicated her intent to end their relationship, or apologized and even agreed that she should not be with him if she was unhappy. Indeed, the government itself admits that Jane Doe's messages were "falling on deaf ears." Hr'g. Tr. 170:9. If the government were seeking to admit Jane Doe's text messages to establish this effect on Mr. Martinez, namely his lack of response, non-responsive responses, or contrition and acceptance of her intentions, that would be a proper non-hearsay purpose for the text messages. But it is not this effect that the government is trying to elucidate.

Rather the government itself states that it seeks to introduce the four-month series of text messages in which Jane Doe repeatedly "attempted to break up with Defendant" for the purpose of establishing a motive for Mr. Martinez "to end her life." Doc. 63 at 6. This purpose "invites the jury to accept as true" Jane Doe's statements of her intent to break up with Mr. Martinez. *Graham*, 47 F. 4th at 567. Indeed, the government makes clear throughout its briefs that it is the truth of Jane Doe's statements that matters, asserting that "[t]he factfinder can surmise from these text messages that in the months before Doe's murder, the Doe-Defendant relationship was on the rocks," Doc. 77 at 3, that the messages show a "repeating pattern [] illustrative of a young woman wishing to extricate herself from a toxic relationship and a young man doing everything possible to prevent that," *id.*, that Jane Doe's text messages "betray Defendant's repeated assertions on the morning of Doe's death that the couple was 'fine' and had no major issues" Doc. 63 at 6, and that "[t]he factfinder can surmise from these text messages [telling him to stop calling her with threats]

6

that in the months before Doe's murder . . . he was also threatening Doe." Doc. 77 at 3. At the

hearing, the government similarly described the substance of Jane Doe's text messages as evidence

of "the victim repeatedly trying to extricate herself from the romantic ten-year relationship she

was in with the defendant," Transcript of October 26, 2023 Hearing at 168:14-16 (Hr'g. Tr.), as

"the reality. This wasn't something seven days before her death[. I]t's not [an] off-the-cuff thing

that she requested out of the blue to have a break-up with the defendant. That's not something that

happened," *id.* at 169:25-170:3, and as proof that "it's always she, not he, that initiates these break

ups." *Id.* at 172:2-3.

In support of its argument that the text messages nonetheless may be admitted to establish

motive, the government in its Supplemental Brief cites to two Florida state cases, neither of which

changes the Court's analysis. First, the government points to a decision in which the court found

emails from the victim to the defendant "admissible to establish a motive for the homicide—the

sudden deterioration of appellant's intense relationship with the victim." *Eugene v. State*, 53 So.

3d 1104, 1108-09 (Fla. Dist. Ct. App. 2011). However, the text messages that the government

seeks to introduce here, which stretch as far back as 118 days before Jane Doe's death, hardly

indicate the "sudden deterioration" of a relationship. *Id.* Indeed, the facts of the case cited indicate

a sudden and permanent end to the relationship in question, a far cry from the recurring pattern of

relationship troubles illustrated by the text messages the government seeks to introduce in the

instant case. Next, the government cites to a case in which the court allowed into evidence a police

report that identified a witness against the defendant in a shooting. *Smith v. State*, 7 So. 3d 473,

497-98 (Fla. 2009). The report had been found in the defendant's nightstand, after he had allegedly

killed that witness. While this case illustrates an appropriate use for out-of-court statements as

probative of motive or intent rather than the truth of the matter asserted, it bears little resemblance

to the facts of the instant case, where the government seeks to admit text messages containing evidence of romantic squabbles for the truth of the matter asserted therein to establish motive.

In short, in arguing that Mr. Martinez's "knowledge of the impending termination of their longtime romantic relationship provides motive for murder," Doc. 63 at 7, the government belies its contention that it does not seek to admit Jane Doe's text messages for the truth of the matter stated therein. To the contrary, it is clear that the "evidence in reality is being offered to prove" that Jane Doe intended to break up with Mr. Martinez, as "the relevance of the out-of-court statements [is] "in the truth of the statements." *RCHFU, LLC v. Marriott Vacations Worldwide Corp.,* 445 F. Supp. 3d 1327, 1343–44 (D. Colo. 2020) (citing *Christou v. Beatport, LLC*, No. 10-cv-02912-RBJ-KMT, 2013 WL 2422916 (D. Colo. June 4, 2013)). This goes beyond what the "effect on the listener" hearsay exception contemplates, and thus requires that Jane Doe's text messages be excluded as hearsay.

## CONCLUSION

For the foregoing reasons, the Court finds that Jane Doe's text messages to Mr. Martinez are inadmissible hearsay, as their actual use is for the truth of the matter asserted rather than to contextualize Mr. Martinez's responses or demonstrate their effect on him.

**IT IS THEREFORE ORDERED** that the government's Motion in Limine to Admit Jane Doe's Electronic Statements to Defendant Regarding Ending Their Relationship [Doc. 63] and Second Motion in Limine to Admit Jane Doe's Electronic Statement [Docs. 79] are **DENIED.**

ENTERED this 5th day of December 2023.

_____
MARTHA VAZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE

8