UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                              No. 21-CR-1934 MV

SANTIAGO MARTINEZ

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on the United States' Motion to Exclude Dr. Brian Cutler. Doc. 103. The Court held a *Daubert* hearing on November 15, 2023. Doc. 104. Having carefully considered the briefs, testimony, oral arguments, and relevant law, and being otherwise fully informed, the Court finds that the Motion is not well-taken and will be denied.

## BACKGROUND

On November 13, 2021, Mr. Martinez was indicted by a grand jury on one count of second-degree murder in Indian Country in violation of 18 U.S.C. §§ 1111(a) and 1153 Doc. 17. On November 22, 2021, Mr. Martinez participated in a police interview ("November 22, 2021 Interview"). Doc. 99, Exs. 3 & 3a. On March 1, 2021, Mr. Martinez filed a motion to suppress statements he made to federal agents during the November 22, 2021 Interview. Doc. 59. On October 16, 2023, Mr. Martinez filed a notice of his intent to offer the testimony of expert Dr. Brian Cutler regarding interrogations and confessions, and particularly the interrogation tactics used against Mr. Martinez during the November 22, 2021 Interview. Doc. 98. On October 21, 2023, the United States filed the instant motion to exclude Dr. Brian Cutler's testimony and requested a *Daubert* hearing. Doc. 103. On November 15, 2023, this Court held a *Daubert* hearing regarding Dr. Cutler's expert testimony. November 15, 2023 Hearing Transcript ("H'rg Tr.").

1

On November 30, 2023, this Court granted Mr. Martinez's motion to suppress the statements he made during the November 22, 2021 Interview. Doc. 121. The government appealed this Court's decision to suppress Mr. Martinez's statements. Doc. 126. On November 19, 2024, the Tenth Circuit reversed this Court's decision to suppress and remanded for further proceedings consistent with its opinion. Doc. 153-2. Consistent with that opinion, this Court denied Mr. Martinez's motion to suppress. Doc. 157. Because of the inclusion of Mr. Martinez's statements as evidence, this Court now considers Dr. Cutler's proposed testimony.

## LEGAL STANDARD

Under Rule 702 of the Federal Rules of Evidence, witnesses with the requisite "knowledge, skill, experience, training, or education" may provide expert testimony if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and
    (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the expert testimony has the burden of showing that it is admissible by a preponderance of the evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n. 10 (1993); *United States v. Orr*, 692 F.3d 1079, 1091 (10th Cir. 2012); Fed. R. Evid. 702 Advisory Committee's Note.

In assessing the admissibility of a proposed expert's testimony, a trial court "generally must first determine whether the expert is qualified." *United States v. Avitia–Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012) (internal quotations and citations omitted). "If the expert is sufficiently qualified, then the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology." *Id*. Lastly, as with all evidence, the expert's testimony must be relevant. Fed. R. Evid. 401. The trial judge is to maintain a gatekeeping function, only

admitting evidence that is both reliable and relevant. *Daubert*, 509 U.S. at 589, 597. The trial judge's gatekeeping function applies not only to testimony based on scientific knowledge, but also to testimony based on technical and other specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999).

The Supreme Court in *Daubert* set forth a non-exclusive list of factors that a court may consider in determining reliability of the testimony, including: (1) whether the theory or technique can be, and has been, tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory is generally accepted in the relevant scientific community. 509 U.S. at 593–94; *see also Kumho Tire Co.*, 526 U.S. at 141. The trial court need not apply all of these factors, *Avitia–Guillen*, 680 F.3d at 1258, and may consider additional relevant factors. *Kumho Tire*, 526 U.S. at 149–50. The Supreme Court has emphasized that the inquiry is meant to be a flexible one, focused on principles and methodology rather than the conclusions that are generated. *Daubert,* 509 U.S. at 595–96.

Evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. In the context of Rule 702, the expert must provide testimony based on their specialized knowledge that is "beyond the ken of the average juror." *United States v. Michael*, No. CR 06-1833, 2007 WL 9657855, at *3 (D.N.M. Nov. 15, 2007) (quoting *United States v. Tapia-Ortiz*, 23 F.3d 738, 740–41 (2d Cir. 1994)). In other words, to be relevant, the expert's testimony must "help the trier of fact to understand evidence or determine a fact in issue." Fed. R. Evid. 702(a).

## DISCUSSION

Mr. Martinez seeks to introduce the testimony of Dr. Cutler, an expert in the psychology of interrogations and confessions, to provide an evaluation of the November 22, 2021 Interview. Doc. 98. Specifically, Dr. Cutler would testify that Mr. Martinez encountered 81 interrogation tactics before ultimately making inculpatory statements, and that Mr. Martinez's confession is "significantly contaminated from details first introduced by law enforcement during the interrogation." *Id.* at 2. Dr. Cutler would not give an opinion as to whether Mr. Martinez's statements were either true or false. *Id.* The government accepts Dr. Cutler as an expert in the psychology of interrogations and confessions, but argues that his testimony should nonetheless be excluded because it would only serve to usurp the jury's role as the determiner of credibility. H'rg Tr. at 5:24-6:12; Doc. 103 at 2. The Court disagrees and, as set forth herein, finds that Dr. Cutler's testimony is reliable and useful to the jury, without overtaking the jury's role as factfinder.

1. **Dr. Cutler's Testimony Relies on Reliable Methods.**

As the government does not oppose Dr. Cutler as an expert in the psychology of interrogations and confessions, *see* H'rg Tr. at 6:4-6, the Court's first determination is "whether the expert's opinion is reliable by assessing the underlying reasoning and methodology." *Avitia-Guillen,* 680 F.3d at 1256. To make this determination, the Court examines Dr. Cutler's testimony under the relevant *Daubert* factors.

First, Dr. Cutler testified that research regarding interrogations and confessions is generally accepted in the scientific community, as evidenced by it being "published in peer reviewed journals in psychology" and "taught in introduction to psychology, social psychology, forensic psychology courses." H'rg. Tr. at 9:8-10. He specifically noted one article organized by the American Psychology Law society that included six experts on the psychology of interrogations and

4

confessions and underwent several levels of peer review as particularly influential in the field. Saul M. Kassin et. al., *Police-Induced Confessions: Risk Factors and Recommendations*, 34 L. & Hum. Behav. 1, 3-38 (2010).

Dr. Cutler testified to the methods used to study interrogations and confessions, including archival research, observational methods, surveys of relevant parties, and psychological experiments. H'rg. Tr. at 10. He discussed the strengths and limitations of each method. *Id.* at 10-11. He testified that the specific interview and interrogation assessment instrument, which he used for his analysis in this case and which he created along with others based on already known interrogation tactics, was published in peer reviewed publications. *Id.* at 28:23-29:5, 80. *See* Kaplan, J., Cutler, B.L., Leach, A.M. & Eastwood, J., *Development of the Interview and Interrogation Assessment Instrument*, 29 Psych., Pub. Pol'y, and L. 1, 46-61 (2022). Dr. Cutler also gave additional information regarding the development of the instrument, explaining how he and his partner drew interrogation tactics from previous research and then created a coding system for the nearly 40 interrogation tactics on which they decided. H'rg. Tr. at 27:10-23. Since its development in 2018, the interview and interrogation assessment instrument has been used not only by Dr. Cutler, but also by other experts in the field. *Id.* at 50:15.

Based on Dr. Cutler's testimony, the Court finds that his methodology has been "published and subject to peer review," is "generally accepted as reliable in the relevant medical and scientific community," and includes standards that he applied in the current case. *Daubert*, 509 U.S. at 593-94. Explicit in Dr. Cutler's testimony is that his research has been published in peer review publications, H'rg Tr. at 28:23, which itself satisfies one *Daubert* reliability factor and provides evidence toward another, namely, that the research is "generally accepted as reliable in the relevant medical and scientific community." *Daubert*, 509 U.S. at 593-94; *see* Kaplan, J., Cutler, B.L.,

5

Leach, A.M. & Eastwood, J., *Development of the Interview and Interrogation Assessment Instrument*, 29 Psych., Pub. Pol'y, and L. 1, 46-61 (2022). The reliability factor is further established by evidence that Dr. Cutler's research is supported by a grant from the Canadian equivalent of the National Science Foundation, is used and taught by others in the field, and was published over time in multiple, as opposed to only one, peer reviewed publications. H'rg Tr. at 26:24-27:1, 50:15, 83:3-4, 28:23.

In addition, Dr. Cutler's testimony demonstrates that there exist standards controlling the psychological analysis of confessions. In particular, Dr. Cutler described how he created an interrogation assessment instrument that "uses a third-party software that opens with the videotaped interrogation and [] allows the coder to code the nearly 40 interrogation tactics…associated with coerciveness." *Id.* at 27:20-23. Using a coding system to account already delineated specific interrogation techniques ensures a standardized process for evaluating interrogations. *See e.g., Kessman v. Myriad Genetics, Inc.*, 2019 WL 1330363, at *2 (C.D. Utah, March 25, 2019) (acknowledging that a coding system promotes standardization). In this way, three of the *Daubert* reliability factors are met.

Dr. Cutler's testimony regarding the application of error rates was inconclusive. He testified as follows:

> Error rate does have application when I am testifying about the instrument used to code the interrogation. So I'm prepared to discuss the internal consistency and inter rater agreement. Much of what I have to offer is also about general principles in psychology and research findings that relate to interrogation and confession. So to that extent, perhaps general error rate in psychology that I mentioned, 0.05 applies. I think that's the best I can offer.

*Id.* at 12:23-135. There were no additional questions asked or testimony elicited as to the error rate of the instrument used to code the interrogation.

6

While the known or potential rate of error is a *Daubert* factor, as noted above, the enumerated *Daubert* factors are not a checklist or definitive test; rather, the reliability "inquiry must be tied to the facts of a particular case." *Kumho Tire Co.*, 526 U.S. at 150. Thus, the inconclusive nature of Dr. Cutler's testimony as to error rate is not determinative of the Court's reliability determination. Based on other relevant factors, the Court finds that (1) Dr. Cutler's testimony is based on principles and methods that are subject to peer review and publication and have existing standards that control the operation of the methods, and (2) the psychology of coerced confessions is generally accepted in the relevant scientific community. For these reasons, the Court finds that Dr. Cutler's testimony is reliable.

**2. Dr. Cutler's Testimony is Relevant and Does Not Usurp the Jury's Job as Factfinder.**

The government argues that Dr. Cutler's testimony is not relevant and only serves to usurp the jury's role in determining Mr. Martinez's credibility. Doc. 103 at 2. In *Crane v. Kentucky*, the Supreme Court declared the right of a defendant to introduce "evidence concerning the physical and psychological environment that yielded [a] confession." 476 U.S. 683, 689 (1986). Following *Crane*, however, in *United States v. Adams*, the Tenth Circuit affirmed the district court's exclusion of a defense psychologist who would have testified that the defendant's low neurocognitive functioning and personality raised a strong possibility that his confession was false. 271 F.3d 1236, 1246 (10th Cir. 2001). Notably, in *Adams*, the Court did not rule that testimony about the confessor would never be allowed, but rather that, in the case before it, the proposed testimony would have amounted to impermissible vouching and therefore was properly excluded. *Id.* As detailed herein, the Court holds that Dr. Cutler's testimony, as delivered at the *Daubert* hearing but with certain limitations, is appropriate under Rule 702 and *Crane*, and is not prohibited by *Adams* or any other Tenth Circuit precedent.

First, the Court holds that the subject of Dr. Cutler's testimony is not common sense. As the defense argues, interrogation techniques are specialized knowledge. *See United States v. Begay*, 310 F. Supp. 3d 1318, 1350 (D.N.M. 2018) ("Police interrogation tactics are 'specialized knowledge,' because a juror would not be able to understand fully the evidence against Begay, specifically the FBI interviews, without knowledge of such tactics."). The fact that police receive training in interrogation tactics is evidence that such techniques are not common knowledge. H'rg Tr. at 87:4-12. Information about such techniques will assist the jury in understanding the evidence. *See United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991) (expert witness testimony about crack investigations was helpful to the jury because the significance of drug amounts, what tools are used to cut drugs, and the fact that both cash and food stamps are commonly traded for drugs are not common knowledge).

Second, Dr. Cutler's testimony, as presented at the *Daubert* hearing, would not usurp the jury's role as factfinder. Rather, it would be instructive and assist the jurors in making their determinations regarding the interrogation and Mr. Martinez's statements. As explained in *Crane*, even after a confession is found to be voluntary, evidence regarding the "physical and psychological environment that yielded the confession can also be of substantial relevance to the ultimate factual issue." 476 U.S. at 689. Dr. Cutler's testimony regarding the 81 interrogation tactics used against Mr. Martinez and law enforcement's inadvertent or advertent release of details about the crime is certainly evidence about the "psychological environment that yielded the confession," and therefore is comfortably allowed under *Crane*. *Id.*

*Adams* does not change this conclusion, as the question therein was distinct, discrete, and did not chip away at the holding in *Crane*. Specifically, *Adams* considered expert testimony

regarding the "psychological makeup of the confessor." 271 F.3d at 1245. Dr. Cutler has never examined or even spoken with Mr. Martinez. *Adams* thus is inapposite.

The general testimony elicited from Dr. Cutler during the *Daubert* hearing that false confessions occur and that "coercive practices can increase the risk of a false confession," H'rg Tr. at 18:23-24, 22:20-21, also falls under the umbrella of relevant information described in *Crane*. Admittedly, in *Benally*, the Tenth Circuit affirmed the trial court's exclusion of expert testimony regarding "the frequency of false confessions and the interrogation techniques known to cause them." 541 F.3d at 993-94. Dr. Cutler's testimony in this case, however, is distinguishable from that considered in *Benally*. The testimony proffered in *Benally* encountered difficulty with the gatekeeping *Daubert* reliability factors because it specifically described a causal relationship between tactics and false confessions without a clear methodology, standardization, testability, or error rate. In contrast, Dr. Cutler was careful to note that "coercion and veracity of the confession are independent concepts," and that interrogation techniques do not lead to false confessions but rather to *the risk of* a false confession. H'rg Tr. at 22:15-20. Thus, unlike the prohibited testimony in *Benally*, Dr. Cutler's testimony is not about "the conditions known to cause false confessions," and does not amount to an advisement that "prior confessions should essentially be disregarded because they are just as likely to be true as untrue." 541 F.3d at 995, 996.

Notably, the Tenth Circuit affirmed the district court's decision to exclude the expert in *Benally* under an abuse of discretion standard, describing the district court's decision as "within the bounds of permissible choice." *Id.* The *Benally* panel did not equally determine that it would be an abuse of discretion for a district judge, after a proper Rule 702 inquiry, to allow *any* expert testimony as to false confessions. *Id.; see also United States v. Parson*, 84 F.4th 930, 939 (10th Cir. 2023) (affirming district court decision to allow government expert witness testifying about

the process for child sex crime victims giving forensic interviews because it was relevant to give context and did not usurp jury's credibility determinations). Accordingly, *Benally* is not determinative of the decision before the Court as to the specific, and more circumscribed, expert testimony that Dr. Cutler intends to present.

Indeed, it would severely, and improperly, limit Mr. Martinez's case for this Court to accept the government's supposition that "if they intend to speak generally, talk about these risk factors, the only logical conclusion is that the risk factors lead to one place, and that place is a false confession." H'rg Tr. at 91:23-92:1. Inherently, all testimony offered in *any* defendant's case likely points to the same place, namely, that the jury should discount the government's evidence for whatever reason and find the defendant not guilty. And although both may point in the same direction, there is a meaningful difference between an expert testifying that a confession is likely false and an expert testifying about interrogation tactics and the fact that such tactics can increase the risk of a false confession. Dr. Cutler's intended testimony falls squarely into the latter category. As such, the Court simply cannot agree that Dr. Cutler's testimony should be excluded.

Under our Constitution, a criminal defendant must be afforded the opportunity to present a "complete defense." *Crane*, 476 U.S. at 690 (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1986)). This right is not unfettered. The rules of evidence, for instance, gatekeep what a defendant may offer in their own defense. Applying those gatekeeping rules here, the Court finds that Dr. Cutler's testimony satisfies the *Daubert* factors of reliability and relevance under Rule 702, and therefore should be allowed before the jury.

### a. Limitations on Dr. Cutler's Testimony

Although Dr. Cutler's testimony, as presented at the Daubert hearing, is permissible, in light of the concerns identified in *Benally* about expert testimony regarding interrogations and

confessions, the Court finds it necessary to outline the bounds of permissible testimony. Accordingly, Dr. Cutler's testimony shall be limited as follows:

- He may testify as to his process of evaluating interrogations and confessions generally and specifically in this case.

- He may testify that Mr. Martinez encountered 81 interrogation tactics, which is a strong amount of coercive pressure, in the interrogation in this case.

- He may testify that Mr. Martinez's statements are contaminated from details first introduced by law enforcement during the interrogation.

- He may testify that false confessions occur.

- He may testify that coercive pressure and falsity are independent from one another, but that coercive pressure can increase the risk of a false statement.

- He may not testify that coercive pressure leads to false statements.

- He may not testify regarding whether any of Mr. Martinez's statements in this case are true or false.

## CONCLUSION

The Court finds that Dr. Cutler's testimony, as presented during the *Daubert* hearing, is both reliable and relevant. Dr. Cutler's testimony therefore meets the threshold outlined by Rule 702 and the Supreme Court in *Daubert* and, as such, should be allowed to go before the jury.

**IT IS THEREFORE ORDERED** that United States' Motion to Exclude Dr. Brian Cutler [Doc. 103] is **DENIED**; Dr. Cutler will be permitted to testify within the parameters set forth in this Order.

ENTERED this 26th day of February 2025.

_____
MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE

11