# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                 No. 21-CR-01934 MV

SANTIAGO MARTINEZ,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Mr. Martinez's Motion to Continue Release Pending Sentencing. Doc. 177. The government filed two briefs in opposition. Docs. 175, 178. The Court heard argument on this matter at the plea hearing on March 28, 2025. Doc. 182. After hearing argument, considering the briefs and relevant law, and being otherwise fully informed, the Court granted the Motion. This Memorandum Opinion reiterates and explains the Court's findings.

## BACKGROUND

Mr. Martinez was arrested on November 23, 2021. Doc. 1. On December 21, 2021, he was indicted for Second Degree Murder for the unlawful killing of Ms. Suazo with malice aforethought. Doc. 17. He was detained from the time of his initial arrest until October 31, 2022, when he was released to the third-party custody of La Pasada Halfway House. Doc. 47. On March 26, 2024, this Court allowed Mr. Martinez to move out of La Pasada and into his own apartment in Albuquerque, but continued to subject him to GPS monitoring, home detention conditions, and random urinalyses. Doc. 151. There have been no violations of his conditions of release.

Over the course of this case, Mr. Martinez and the government each filed motions in limine. On March 1, 2023, Mr. Martinez moved to suppress statements he had made to law enforcement

1

officers. Doc. 59. Alternatively, he noticed his intent to offer the expert witness testimony of Dr. Brian Cutler regarding interrogations and false confessions. Doc. 98. On March 21, 2023, the government moved to admit text messages Ms. Suazo sent to Mr. Martinez regarding ending their relationship. Doc. 63. And on March 22, 2023, the government noticed its intent to introduce Rule 404(b) evidence. Doc. 65. After a hearing and additional briefing, this Court granted Mr. Martinez's motion to suppress and denied the government motions to admit the text message and Rule 404(b) evidence. Docs. 121, 125, 128.

On December 5, 2023, the government first noticed its intent to appeal. Doc. 126. On December 31, 2024, the Tenth Circuit issued its mandate and transferred jurisdiction back to this Court. Doc. 153. In its opinion, the Tenth Circuit reversed and remanded this Court's suppression determination, this Court's finding of hearsay regarding the text message evidence, and this Court's exclusion of the 404(b) evidence, based on the "changed evidentiary landscape." Doc. 153-2. In response, this Court denied Mr. Martinez's suppression motion, doc. 157, but did allow Dr. Cutler to offer expert testimony, doc. 173. This Court had not yet ruled on the outstanding matters when Mr. Martinez and the government emailed the Court asking for a change of plea hearing. This Court held a change of plea hearing on March 28, 2025. Doc. 182. At that hearing, Mr. Martinez pled guilty to voluntary manslaughter and entered into a plea agreement with the government pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Doc. 181. The plea agreement establishes a sentencing range of 10 to 15 years.

In the plea agreement, Mr. Martinez admits the following facts. On the night of November 12, 2021, he was with Ms. Suazo, his longtime girlfriend, alone at their shared home in Taos Pueblo. *Id.* at 4. Around 3:00 a.m. the following morning, they fought in the area right outside of their home regarding their plans for the future. *Id.* Ms. Suazo wanted to end the relationship. *Id.*

Mr. Martinez did not. *Id.* Mr. Martinez became angry. *Id.* at 5. A physical fight between the two of them ensued. *Id.* Mr. Martinez pulled Ms. Suazo's earring from her ear. *Id.* He wanted to hurt Ms. Suazo. *Id.* He got into the driver's seat of Ms. Suazo's SUV and ran her over, which killed her. *Id.* Mr. Martinez did not act with malice aforethought. *Id.* He had drunk alcohol that night, but he did know what he was doing. *Id.*

## DISCUSSION

Under 18 U.S.C. § 3143(a)(2), the Court "shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless—(A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; and (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community."

Section 3142 (f)(1)(A) lists crimes of violence, defined by 18 U.S.C. §3156(a)(4), which include voluntary manslaughter. *See United States v. Serawop*, 505 F.3d 1112, 1118-19 (10th Cir. 2007) (considering voluntary manslaughter to be a crime of violence under the Mandatory Victims Restitution Act); *United States v. Wilkerson*, No. 00-CR-557 JB, 2023 WL 5564948, at *12 n.10 (D.N.M. Aug. 29, 2023) (unpublished) (noting Tenth Circuit precedent considering voluntary manslaughter to be a crime of violence for sentencing guidelines purposes). Doc. 175 at 3. Mr. Martinez cannot be released via 18 U.S.C. § 3143(a)(2) because there is not a substantial likelihood that a motion for acquittal or a new trial will be granted, and the government does not recommend that no sentence of imprisonment be imposed. In fact, the terms of the signed plea agreement negate the possibility of a motion for acquittal or a new trial and require that Mr. Martinez will serve a sentence of at least ten years in prison. Doc. 181.

Under 18 U.S.C. § 3145(c), "a person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." Taking § 3143 (b)(1) and § 3145(c) together, Mr. Martinez must be detained unless this Court finds that he is not a danger to the community or a flight risk and that exceptional circumstances exist.

In Mr. Martinez's opposed Motion to Continue Release Pending Sentencing, he argues that he is not a flight risk or danger to the community, as evidenced by his complete compliance while on pretrial release, and that the combination of factors present—namely, his success with mental health and substance abuse treatment, lack of violations, steady employment, limited criminal history, maintaining no contact with the victim's family, and strong ties to Taos—create exceptional circumstances even if each factor on its own would not. Doc. 177 at 6. In a Brief in Support of Detention Pending Sentencing, and again in a Response, the government argues that exceptional circumstances do not exist, and that Mr. Martinez is both a flight risk and a danger to the community. Docs. 175, 178.

This Court finds that Mr. Martinez is neither a flight risk nor a danger to the community. He has been out of custody on conditions of release for about two and a half years. Doc. 177 at 2. There have been no violations of conditions. He has gained and maintained employment at Rite Way Pallet Company during this period of release and has even received two raises during this time. *Id.* Not only has he been in perfect compliance while on release, including while residing at La Pasada Halfway House, but he also did not create any issues or turn to substance abuse while detained at Cibola. *Id.* at 6.

4

The government argues that Mr. Martinez is now a flight risk because he faces a mandatory ten-year sentence. Doc. 175 at 4. It seems improbable, however, that the mandatory ten-year sentence to which he has pled changes his calculus to flee, as he has faced the possibility of a much lengthier custodial sentence the entire time he has been on release. The government also argues that Mr. Martinez is a risk to the community based on the facts he admitted in this case: ripping Ms. Suazo's earring from her ear before running her over, his previous violence toward Ms. Suazo while drunk, and his previous driving while intoxicated charges. *Id.* at 5. The government argues that Mr. Martinez's behavior shows that he is a risk to others when drunk. *Id.* While it may be true that Mr. Martinez has "shown a proclivity for making rash decisions while drunk that impact community safety," his admission in the plea agreement does not dramatically change the calculus as to whether he is currently a threat to public safety. *Id.* Importantly, Mr. Martinez is sober. He has maintained sobriety for the entirety of his supervision, with no issues. As his alcohol use is under control and continues to be closely monitored, there is no evidence to suggest that Mr. Martinez currently presents a risk to the community. For these reasons, the Court finds by clear and convincing evidence that Mr. Martinez is neither a flight risk nor a danger to the community. March 28, 2025 Hearing Transcript ("H'rg Tr.")[1] at 36:20-38:3.

The main question at issue is whether exceptional circumstances exist to continue Mr. Martinez's release pending sentencing. The defense asserts that there are exceptional circumstances, because Mr. Martinez has been extraordinarily successful on release thus far—incurring no violations, never testing positive for alcohol or drugs, participating successfully in mental health treatment and substance abuse treatment, obtaining and maintaining employment, maintaining no contact with the victim's family—and because he does not have a substantial

---

[1] The Court's citations to the transcript refer to the court reporter's original, unedited version; any final transcripts may contain slightly different page and/or line numbers.

criminal history. Doc. 177. The government does not contest these facts, but it argues that they do not constitute exceptional circumstances. Doc. 178. The government notes that, historically, exceptional reasons were meant to be truly rare. Doc. 175 at 6; *see United States v. Lopez*, No. 16-CR-451 JB, 184 F. Supp. 3d 1139, 1144 (D.N.M. 2016) (discussing historical evidence regarding examples of the very rare circumstances that might be exceptional). The government argues that merely following the conditions of release is what he is supposed to do and is not exceptional.

The body of case law on what constitutes "exceptional circumstances" is somewhat contradictory. "[E]xceptional means clearly out of the ordinary, uncommon, or rare." *United States v. Mutte,* 383 F. App'x 716, 718 (10th Cir. 2010) (quoting *United States v. Little,* 485 F.3d 1210, 1211 (8th Cir. 2007)). Courts must in engage in a "case by case" evaluation, *Mutte,* 383 F. App'x at 718, to determine whether there exists "a unique combination of circumstances giving rise to situations that are out of the ordinary." *United States v. DiSomma,* 951 F.2d 494, 497 (2d Cir. 1991). "The district court has broad discretion . . . to consider all the particular circumstances of the case before it and draw upon its broad experience with the mainsprings of human conduct." *Mutte,* 383 F. App'x (quoting *United States v. Garcia,* 340 F.3d 1013, 1018 (9th Cir. 2003)).

The Tenth Circuit has noted that "[a] wide range of factors may bear upon the analysis," but has not specifically defined the relevant factors. *Id.* (quoting *Garcia,* 340 F.3d at 1018). Other courts have listed a number of nonexclusive factors that district courts should consider, including: (1) whether detention imposes an unusually harsh effect of a personal nature not typically experienced by an individual facing incarceration; (2) whether a defendant was unusually cooperative with the government; (3) whether the defendant's low culpability is likely to reduce the sentence; (3) whether a defendant's appeal presents a novel legal question; and (4) whether the defendant is extremely unlikely to engage in recidivist behavior while on release. *See, e.g. Garcia,*

340 F.3d at 1018–20 ("The district court may consider circumstances that would render the hardships of prison unusually harsh for a particular defendant."); *United States v. Green,* 250 F. Supp. 2d 1145, 1150 (E.D. Mo. 2003) (noting that courts should consider whether the defendant will receive a short sentence, whether the appeal presents a novel legal question, and whether the defendant is likely to engage in criminal behavior while on release); *United States v. Carretero,* No. 98CR418TJM, 1999 WL 1034508 (N.D.N.Y. Nov. 4, 1999) (denying release but stating that active cooperation with the government could constitute an exceptional circumstance). Of course, this is not an exhaustive or binding list, and the question is ultimately "whether, due to any truly unusual factors or combination of factors . . . it would be unreasonable to incarcerate the defendant" pending sentencing. *Mutte,* 383 F. App'x at 718.

Courts have noted circumstances that do not rise to the level of "exceptional." In *United States v. Hosier*, the Tenth Circuit found that compliance with conditions of pretrial release is not itself exceptional. 617 F. App'x 910, 913-14 (10th Cir. 2015) (determining that exceptional circumstances do not exist); *see also Little*, 485 F.3d at 1211 ("It is not exceptional to expect every defendant to timely appear in court and to obey the court's order concerning pretrial conditions of release"). In *Wages*, the Tenth Circuit affirmed a lower court's rejection of exceptional circumstances when the defendant used a wheelchair, had trouble hearing, was needed to care for his mother, and did not have a criminal history. *United States v. Wages*, 271 F. App'x 726, 727-28 (10th Cir. 2008).

On the other hand, the Tenth Circuit has also affirmed findings of exceptional circumstances in circumstances somewhat similar to those surrounding Mr. Martinez. *See Mutte*, 383 F. App'x. at 717 (finding the combination of the facts—that defendant was supervised by federal and tribal authorities during dual prosecution over a three-year period, was fully compliant

and lived near the victim without incident—constituted exceptional circumstances); *see also United States v. Kaquatosh*, 252 F. Supp. 2d 775, 778 (E.D. Wis. 2003) (finding exceptional circumstances because defendant did extremely well on pretrial release, was employed, was pursuing mental health treatment, and was supporting his family); *United States v. Cantrell*, 888 F. Supp. 1055, 1057-58 (D. Nev. 1995) (finding exceptional circumstances because the defendant was a Native American supervised by both federal and tribal authorities and "more importantly" was participating in substance abuse treatment that would be more beneficial than incarceration).

Taken together, this Court finds that Mr. Martinez's circumstances are exceptional. H'rg Tr. at 38:6. Although in the written Pretrial Services Report, Mr. Martinez's probation officer recommended that Mr. Martinez be remanded into custody, doc. 176 at 2, at the change of plea hearing, his probation officer noted that Mr. Martinez's compliance, success, and growth while on pretrial release was in his experience "very rare." H'rg Tr. at 35:18-19. In this Court's experience, Mr. Martinez's perfect compliance with pretrial conditions for two and a half years is both unusual and exceptional, by the common definition of the word. *Id.* at 38:4-16. *See Mutte,* 383 F. App'x (quoting *United States v. Garcia,* 340 F.3d 1013, 1018 (9th Cir. 2003)) ("The district court has broad discretion . . . to consider all the particular circumstances of the case before it and draw upon its broad experience with the mainsprings of human conduct."). It is extraordinary for a person who struggles with addiction to maintain sobriety for such a long period of time, and in such a stressful period of time, without one single relapse, as Mr. Martinez has done. It is extraordinary for someone who is young and living apart from his close-knit community and family for the first time, a Native American man who is living away from his Pueblo in a big city, to remain stable and compliant with no issues.

8

His perfect compliance, however, is not the sole basis upon which Mr. Martinez's circumstances meet the legal definition of "exceptional." Not only has he complied, but also he has made tremendous progress. *Id.* at 38:13-16. By remaining sober and following his conditions of release, he has had both the opportunity and the mandate to develop healthy coping mechanisms. He has gained and maintained steady employment, and even received two raises while on release. Doc. 177 at 2. He has committed to bettering himself through therapy, which has enabled him to remain sober even in very stressful moments, like when major evidentiary decisions in his case were overturned. H'rg Tr. at 36:24-37:25, 38:9-19.

And his circumstances are similar to those found exceptional by the court in *Cantrell* and *Mutte*. In *Cantrell*, the Court noted dual prosecution and previous time spent in custody, and then said that "more importantly, while on release, Cantrell has been participating in a substance abuse program." *Cantrell*, 888 F. Supp at 1057. Like Cantrell, Mr. Martinez has been participating in a substance abuse program. H'rg Tr. at 37:21-22. While there was no dual prosecution in this case, there was a more than year-long interlocutory appeal that reversed major evidentiary decisions that were initially favorable to the defense, which is a somewhat unusual posture. And while Mr. Martinez does not note any specific prison programming that a presentencing incarceration might affect, continued release pending sentencing likely will enable Mr. Martinez to receive a lower classification level when he is remanded to the custody of the Bureau of Prisons, which in turn will allow him access to more programming. *Id.* at 39:14-16.

Mr. Martinez's circumstances are also similar to those in *Mutte*, which the Tenth Circuit affirmed as exceptional. Like Cantrell, Mutte was facing dual prosecution, which the Tenth Circuit notes is "unusual and uncommon," in much the same way as is a lengthy interlocutory appeal. *Mutte*, 383 F. App'x at 717. And like Mutte, Mr. Martinez is not a danger to the community or a

9

flight risk and has been fully compliant with his conditions of release for an extended period of time. *Id.* In Mutte's case it was three years, in Mr. Martinez's, about two and a half. *Id.* The Tenth Circuit also noted as a justification of exceptional circumstances that "Mr. Mutte had lived within the same community as the victim without incident during the entire period." *Id.* Mr. Martinez has likewise maintained no contact with Ms. Suazo's family, as ordered. H'rg Tr. at 37:10-15. Indeed, he left the Taos Pueblo altogether to avoid contact with Ms. Suazo's family, despite the fact that the Taos Pueblo is where he was raised and has always lived, and where his entire family lives. He has stayed away from the Taos Pueblo, thereby distancing himself from his own community, out of respect for the victim's family and his conditions of release. In this way, Mr. Martinez was in a more difficult position than Mutte, as he was for the first time in his life living apart from his family and support system in an unfamiliar big city.

This Court is also concerned about Mr. Martinez's health and mental health, including his depression and possible self-harm. *Id.* at 34:8-25. Allowing him this time before a lengthy period of incarceration will enable him to strengthen his mental health and sobriety, and thus give him the tools he will need to withstand the pressures of incarceration. Mr. Martinez is relatively young and small in stature, both qualities that will likely make time spent in custody more dangerous and more difficult. These are also concerns this Court may consider in deciding release pending sentencing. *See Garcia,* 340 F.3d at 1018–20 ("The district court may consider circumstances that would render the hardships of prison unusually harsh for a particular defendant.")

For all of these reasons, the Court finds that Mr. Martinez's circumstances are exceptional.

## CONCLUSION

This Court finds that Mr. Martinez is neither a flight risk nor a danger to society. In addition, there are exceptional circumstances that justify his continued release. Therefore, Mr. Martinez will remain on his current conditions of release pending sentencing.

10

**IT IS THEREFORE ORDERED** that Mr. Martinez's Motion to Continue Release Pending Sentencing [Doc. 177] is granted, consistent with this Memorandum Opinion and Order.

ENTERED this 10th day of April, 2025.

_____
MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE